UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
WILMARIS JORDAN AND MARINA     :
PORTNOY,     :
    :
          Plaintiffs,     :       **OPINION AND ORDER**
    :       12-CV-5715 (DLI) (RLM)
    -against-     :
    :
UNITED CEREBRAL PALSY OF NEW     :
YORK CITY, INC.,     :
    :
          Defendant.     :
-------------------------------------------------------- x
**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiffs Wilmaris Jordan ("Jordan") and Marina Portnoy ("Portnoy") (collectively,

"Plaintiffs") filed the instant action on November 19, 2012 against defendant United Cerebral

Palsy of New York City, Inc. ("Defendant" or "UCP"), a not-for-profit corporation that provides

services to individuals afflicted with cerebral palsy and other developmental disabilities in New

York City, for alleged unlawful employment practices in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights

Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. (*See* Affidavit of Barbara Falcone[1] in

Support of Motion for Summary Judgment ("Falcone Aff."), Dkt. Entry No. 55.)

Specifically, Jordan asserts that UCP committed national origin discrimination by

terminating her for speaking Spanish in the workplace and retaliated against her for complaining

about it. Portnoy contends that she was retaliated against because she objected to the alleged

national origin discrimination against Jordan.

---

[1]     Barbara Falcone ("Falcone") was UCP's Director of Educational Program Services when Jordan and
Portnoy were employed by UCP. (Falcone Aff. at ¶ 1.)

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure for dismissal of Plaintiffs' action. Plaintiffs oppose. For the reasons set forth below, Defendant's motion for summary judgment is granted as to the federal claims and the court declines to exercise supplemental jurisdiction over the state and city claims, which are dismissed without prejudice.

## BACKGROUND[2]

### I.     Plaintiffs' Employment History with UCP

On July 18, 2005, Jordan began working as a teacher's assistant at UCP's Staten Island Children's Program ("the Program") after having served two years as a Habilitation Program Assistant in UCP's Staten Island Day Treatment Program. (*See* Defendant's Rule 56.1 Statement ("Def.'s R. 56.1 Stmt.") at ¶¶ 32, 33, Dkt. Entry No. 58.) The Program provides comprehensive educational and therapeutic services for children aged three to five suffering from physical or developmental infirmities. (*See* Falcone Aff. ¶ 4; Declaration of Frank Mercogliano[3] in Support of Defendant's Motion for Summary Judgment ("Mercogliano Decl.") at ¶ 3, Dkt. Entry No. 56.) Jordan is of Hispanic descent and is fluent in Spanish. (*See* Amended Complaint ("Am. Compl.") at ¶ 2, Dkt. Entry No. 4.)

In her role as a teacher's assistant, Jordan's duties and responsibilities included providing instructional support to disabled preschool children under the general supervision of a teacher as well as assisting with supervision and general care of the children in her assigned classroom. (Mercogliano Decl. at ¶ 12.) Additionally, Jordan performed Spanish interpretation services for the Program's Spanish-speaking clients and their families when necessary to communicate about

---

[2]  The following facts are undisputed, unless otherwise noted.

[3]  Frank Mercogliano was UCP's Acting Director of the Staten Island Children's Program. (Mercogliano Decl. at ¶ 1.)

the clients' health, safety, treatment, education and care. (*Id*. at ¶ 16; Jordan Deposition ("Jordan Dep." at 151:8-11, 194:4-13, Dkt. Entry No. 61-2.)

Portnoy began her employment with the Program as a teacher on October 27, 2003. (Mercogliano Decl. at ¶ 25.) In that capacity, Portnoy was responsible for coordinating educational lessons and activities for the developmentally disabled children in the Program. (*Id*. at ¶ 26.) From the middle of 2009 through June 2010, Portnoy worked in Classroom 218 that served low-functioning children afflicted with cerebral palsy and/or other severe developmental disabilities. (*Id*. at ¶ 27.) Portnoy's additional responsibilities included the supervision of teaching assistants who were assigned to her classroom, including Jordan, and ensuring their compliance with UCP policies and procedures. (*Id*. at ¶ 26, 27.) One such policy, the "Language Policy," requires the exclusive use of English in communications with clients unless another language was necessary to communicate with a client for purely business purposes. (*Id*. at ¶ 24; Falcone Aff., Exhibit D, Employee Handbook at 46, Dkt. Entry No. 55-1.) UCP's proffered reason underlying the institution of this Language Policy is that the majority of the people that UCP serves speak English and, therefore, it was necessary to communicate in a manner that is sensitive to their needs and to their ability to understand what is transpiring in their environment. (Falcone Aff., Exhibit D, Employee Handbook at 46.)

While Portnoy was instructed to enforce the Language Policy in her classroom, Mercogliano contends that she never was directed to report Jordan's or any other UCP employees' gratuitous use of Spanish to management. (Mercogliano Decl. at ¶ 28.) The UCP's Code of Conduct and Corporate Compliance Policy (the "Code") expressly prohibits employees from maintaining personal and social relationships with the families of children in the Program to avoid both the appearance of and actual impropriety. (*Id*. at ¶ 14.) The Code further

maintains a Language Policy that mandates the use of English by employees while performing employment duties and when engaging with co-workers, UCP's clients and clients' family members. (*Id.*) The Code permits communication with a client in the client's native language, provided such communication serves to enhance the health and safety of the client. (*Id.* ¶ 15.) Both Jordan and Portnoy admitted that they received the employee handbook, read the Code and were aware of UCP's Language Policy. (Falcone Aff., Exhibit E, Receipt of Employee Handbook, Dkt. Entry No. 55-1; Jordan Dep. at 226:2-24, Dkt. Entry No. 61-3; Portnoy Dep. at 93:7-12, 297:3-15, 298:19-299:16.)

## II.    Alleged Discriminatory Conduct and Events Leading to Plaintiff's Termination

### A.  Jordan's Termination

Beginning in 2009, Jordan both was counseled and disciplined at meetings and by written warnings by UCP management for several Code violations including, *inter alia*, poor attendance, consistent tardiness, fraternizing with the families of children in the Program, speaking in Spanish without a legitimate business purpose, and using a loud and inappropriate tone of voice towards the children under her supervision. (Mercogliano Decl. at ¶¶ 13-19.) On May 25, 2010, one of the Program's librarians observed Jordan forcibly handle two developmentally disabled children. (*See* Falcone Aff. at ¶¶ 10-13; Def.'s R. 56.1 Stmt. at ¶¶ 65-68.) Falcone investigated the incident by interviewing the librarian along with other UCP employees that had the opportunity to observe Jordan's interaction with UCP clients during the course of her employment with the company. (Falcone Aff. at ¶¶ 10-20.) The librarian, Mary Jacobson ("Jacobson"), told Falcone that she observed Jordan grab a four-year old client by the arm in a "rough manner," drag the client to a chair, and forcefully push the chair under the table. (*Id.* at ¶¶ 11-12.) Jordan then loudly admonished the client about failing to listen to her and follow her

directions. (*Id*. at ¶ 12.) Jacobson also informed Falcone that she observed Jordan carry a five-year old client by one arm and one leg from a diaper changing table to a chair. (*Id*. at ¶ 13.) Jordan denied both instances of alleged child abuse. (Jordan Dep. at 175:16-25, 176:6-20.)

The other witnesses that Falcone interviewed informed her that Jordan often was rough with the clients and often spoke to them using a harsh tone of voice. (*Id*. at ¶¶ 14-18.) On June 3, 2010, Jordan's employment was terminated as a result of Falcone's investigation. (Falcone Aff. at ¶¶ 22, 23.) However, Jordan contends that the claims of child abuse served as a pretext for her termination based on her use of Spanish when communicating with clients' families concerning the acquisition of enhanced government services and charitable benefits. (Jordan Dep. at 192:17-25, 193:12-24, 201:10-22.)

**B. Portnoy's Termination**

On June 14, 2010, UCP found that Portnoy failed to follow the established reporting procedures when a child from her class went missing for approximately ten minutes. (Mercogliano Decl. at ¶ 31; Def.'s R. 56.1 Stmt. at ¶ 145.) Specifically, one of the Program's physical therapists found an unattended non-verbal four-and-a-half-year-old child, who suffers from Down Syndrome and other physical impairments, from Portnoy's class who was climbing up a stairwell; the child was scheduled to be in the gymnasium with the other pupils assigned to Portnoy. (Mercogliano Decl. at ¶¶ 31, 37, 38; Def.'s R. 56.1 Stmt. at ¶¶ 146, 150.) Under governing UCP procedures, a staff member who discovers a child missing immediately must report the incident to management even prior to searching for the child. (Mercogliano Decl. at ¶ 30; Def.'s R. 56.1 Stmt. at ¶ 141.) Portnoy, who was familiar with the correct procedures for reporting a missing child, commenced a search for the child instead of notifying management of his disappearance. (Mercogliano Decl. at ¶¶ 29, 31; Def.'s R. 56.1 Stmt. at ¶¶ 143, 145.)

Pursuant to an investigation conducted by Marianne Giordano, UCP's Assistant Executive Director for Education Services, UCP terminated Portnoy's employment on June 15, 2010 based upon this negligence. (Mercogliano Decl. at ¶ 41.) However, Portnoy contends that this proffered reason for her termination was a pretext for her opposition to the purported discrimination against Jordan. (Portnoy Deposition ("Portnoy Dep.") at 240:18-241:8, Dkt. Entry No. 61-7.) Specifically, Portnoy alleged that Mercogliano and Susan Leslierandall ("Leslierandall"), UCP assistant director, instructed her to report to them any time Jordan used Spanish in the workplace. (*Id*. at 128:16-17, 134:15-17, 180:22-181:7, Dkt. Entry No. 61-6.)

Plaintiffs argue that Defendant's pretextual reasons for their termination establish prima facie claims of unlawful discrimination and retaliation. (*See generally* Am. Compl.; Plaintiffs' Memorandum of Law in Opposition to Summary Judgment ("Pl. Opp."), Dkt. Entry No. 63.)

Plaintiffs also move to strike Defendant's supporting affidavits and declarations because they contain inadmissible hearsay insufficient to raise genuine material issues of fact. (Pl. Opp. at 6-9.) Specifically, Plaintiffs argue that, since the statements contained in the Falcone Affidavit and the Mercogliano Declaration were not based on the affiants' personal knowledge in violation of Federal Rule of Civil Procedure 56(e), it is improper for the Court to consider them in deciding the instant summary judgment motion. (*Id*.) Defendant counters that the contents of the Falcone Affidavit and the Mercogliano Declaration were based upon personal knowledge acquired over a period of time. (Defendant's Reply Memorandum of Law ("Def. Rep.") at 7-9, Dkt. Entry No. 64.)

For the reasons discussed below, Plaintiffs' motion to strike Defendant's supporting affidavits and declarations is denied and Defendant's motion for summary judgment is granted in its entirety.

**DISCUSSION**

**I.      Admissibility of the Mercogliano Declaration and the Falcone Affidavit**

As an initial matter, Plaintiffs' motion to strike the Declaration of Frank Mercogliano and the Affidavit of Barbara Falcone are denied.  Section 1746 of Title 28 of the United States Code provides that unsworn declarations or affidavits are admissible in evidence as long as the writing contains a subscription by the declarant "in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on (date).  (Signature).'"  28 U.S.C. § 1746(1); *see LeBoeuf, Lamb, Greene & McRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999).  The Mercogliano Declaration states that "I declare under penalty of perjury that the foregoing is true and correct," followed by Mercogliano's signature.  (Mercogliano Decl. at ¶ 43.)  Although the Mercogliano Declaration does not contain the verbatim language of Section 1746, it substantially complies with the statutory requirements, which is all that is necessary.  *Worsham*, 185 F.3d at 65-66 (language such as "[u]nder penalty of perjury, I make the statements contained herein" complies with the requirements of Section 1746 even though it does not contain the exact language of the statute or state that the contents are "true and correct").  Therefore, Plaintiffs' motion to strike the Mercogliano Declaration on the ground that it is unsworn is denied.

Federal Rule of Evidence 602 directs that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  *New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000) (quoting Fed. R. Evid. 602).  However, "[a] witness's conclusions based on personal observations over time may constitute personal knowledge."  *Id*.  The test for admissibility of

such evidence is "whether a reasonable trier of fact could believe the witness had personal knowledge." *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir. 1991).

In the instant matter, Mercogliano, as the Acting Director of the Program, has primary knowledge with respect to the information that he attests to in his declaration. Notwithstanding Mercogliano's conclusory statements in Paragraphs of 24 and 42 of his declaration, the remainder of the statements therein are admissible pursuant to Rule 602.[4] Indeed, it is true that some contents of the declaration are not based on the affiant's direct knowledge. However, because the clear function of the declaration is to itemize the events resulting in Plaintiffs' termination, the purposes underlying Rule 56, "to safeguard and legitimate the evidence used to decide a motion for summary judgment," are served by considering the declaration on this motion. *Owens-Corning Fiberglas Corp. v. U.S. Air*, 853 F. Supp. 656, 663 (E.D.N.Y. 1994). Accordingly, Plaintiffs' motion to strike the Mercogliano Declaration on hearsay grounds is also denied.

Plaintiffs' motion to strike the Falcone Affidavit similarly is without merit. Although the observations of Jordan's alleged abuse of developmentally disabled children was not based on Ms. Falcone's personal knowledge, but rather her investigation into the incident, an examination of the affidavit reveals her personal involvement. The primary purpose of the Falcone Affidavit is to identify those who witnessed Jordan's transgressions with the clients and introduce into evidence the exhibits annexed to her affidavit. *Id.* (finding that, when the clear function of an affidavit is to identify and introduce into evidence the exhibits annexed thereto, the purposes underlying Rule 56(e) are satisfied). Ms. Falcone's testimony is competent to serve those functions. Therefore, Plaintiffs' motion to strike the Falcone Affidavit is denied.

---

[4] In Paragraph 24 of the Mercogliano Declaration, Mercogliano asserts that Jordan's allegations regarding national origin discrimination and retaliation are meritless. In Paragraph 42 of the same declaration, Mercogliano states that Portnoy's termination "was unrelated to any purported complaint of discrimination." (Mercogliano Decl. ¶ 42.)

## II.     Summary Judgment Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted).  A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).  "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the

absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (internal citation omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (internal citations and quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

There are, however, special considerations that the courts must allow for when reviewing claims of employment discrimination and retaliation against the threat of summary judgment. *Baldwin v. Goddard Riverside Community Center*, 53 F. Supp. 3d 655, 667 (S.D.N.Y. 2014). In the context of these civil rights claims, the courts have cautioned against the rote granting of summary judgment motions "'because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence.'" *Id.* at 667; (quoting *Thompson v. Morris Heights Health Ctr.*, 2012 WL 1145964, at *4 (S.D.N.Y. April 6, 2012); *see Ukeje v. N.Y.C. Health & Hosps. Corp.*, 821 F. Supp. 2d 662, 668 (S.D.N.Y. 2011); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).

Indeed, the Second Circuit Court has directed the district courts to "carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions" where direct evidence of an employer's discriminatory or retaliatory intent is not readily discernible. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). The courts in this circuit have made clear in discrimination cases that "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial . . . [t]here must be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998); *see e.g.*, *Ukeje*, 821 F. Supp. 2d at 668; *Fisher v. Vassar College*, 114 F.3d 1332, 1359 (2d Cir. 1997); *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997); *Norton v. Sam's Club*, 145 F.3d 114, 117-20 (2d Cir. 1998).

However, these special considerations do not reduce the pleading requirements imposed upon plaintiffs necessary to defeat summary judgment motions. *See Baldwin*, 53 F. Supp. at 667. In order to serve the economic purposes of summary judgment, a plaintiff in a retaliation case is required to "'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . [Plaintiff] must come forth with evidence sufficient to allow a reasonable jury to find in [Plaintiff's] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (quoting *Matsushita*, 475 U.S. at 586). Mere conjecture and conclusory statements proffered by a plaintiff are insufficient to surmount a motion for summary judgment. *Baldwin*, 53 F. Supp. at 667-68; *see Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

**III.    Jordan's Title VII Discrimination and Retaliation Claims**

Claims arising under Title VII must be reviewed using the three-step burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green* beginning with the plaintiff's establishment of a prima facie case.  411 U.S. 792 (1973); *see e.g., Johnson v. N.Y.C. Dep't of Ed.*, 39 F. Supp. 3d 314, 321 (E.D.N.Y. 2014); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  In order to establish a prima facie case of national origin discrimination, "a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  *Pibouin v. CA, Inc.*, 867 F. Supp. 2d 315, 321 (E.D.N.Y. 2012).  The courts have "characterized plaintiff's prima facie burden as 'minimal' and '*de minimis.*'"  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (quoting *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)); *see Baldwin*, 53 F. Supp. 3d at 668.

The *McDonnell Douglas* burden-shifting analysis then requires that, if the plaintiff demonstrates a prima facie case, a rebuttable presumption of discrimination and/or retaliation arises that places the burden of proof on the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action.  *Woodman*, 411 F.3d at 76; *see also Johnson*, 39 F. Supp. 3d at 321-22.  Finally, if the employer satisfies this burden, then the presumption of discrimination and/or retaliation disappears and the burden returns to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but served as a pretext for discrimination and/or retaliation.  *Jute*, 420 F.3d at 173; *see also Johnson*, 39 F. Supp. 3d at 322.

### A. Jordan's National Origin Discrimination Claim

Jordan does not establish a prima facie case of national origin discrimination. UCP correctly concedes that Jordan is a member of a protected class who suffered an adverse employment action, thereby satisfying the first and third prongs of the prima facie analysis. (Defendant's Memorandum of Law ("Def. Mem. of Law") at 12, Dkt. Entry No. 59.) However, Jordan fails to present even *de minimis* evidence to satisfy the second and fourth prongs of the prima facie analysis.

As to the second prong, UCP provides substantial evidence of poor attendance, lateness for work, maintenance of close personal and social relationships with clients' families in violation of the Code, violation of the Language Policy, and abuse of two developmentally disabled children as reasons supporting its contention that Jordan did not perform her job duties satisfactorily. (Mercogliano Decl. at ¶¶ 19-21.) Jordan's burden on this prong is to "'show only that [s]he possesses the basic skills necessary for performance of the job.'" *Pibouin*, 867 F. Supp. 2d at 321 (quoting *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2d Cir. 2001)). The Second Circuit has ruled that it is improper "to find that plaintiff has not established a prima facie case merely because employer was dissatisfied with plaintiff's performance." *Chukwurah v. Stop & Shop Supermarket Co.*, 354 F. App'x 492, 494-95 (2d Cir. 2009).

However, the reasons enumerated by UCP in support of Jordan's unsatisfactory job performance go beyond mere dissatisfaction with that performance. Jordan's job description mandated that she provide, *inter alia*, instructional services to developmentally disabled pre-school children under a teacher's supervision and provide physical aid to those children in her care. (Mercogliano Decl., Exhibit A, United Cerebral Palsy Job Description, Dkt. Entry No. 56-1.) Jordan's reported lack of attendance, lateness and physical abuse of two of those children

contravened the responsibilities that were critical to her employment and proper execution of her duties. Jordan was aware of these duties because she signed the document that listed them. (*Id.*) For these reasons, Jordan does not satisfy the second prong of the prima facie analysis.

With respect to the fourth prong of the analysis, Jordan has failed to demonstrate that her termination occurred under circumstances giving rise to an inference of discrimination. "Inference of discrimination is a flexible standard that can be satisfied differently in different factual scenarios." *Sethi v. Narod*, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014) (internal quotation marks and citations omitted). An inference of discriminatory intent can be drawn from any of the following circumstances:

> the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).

"No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination." *Sethi*, 12 F. Supp. 3d at 536 (internal quotation marks and citations omitted). "However, a plaintiff's mere subjective belief that he was discriminated against … does not sustain a … discrimination claim." *Id.* (internal quotation marks and citations omitted). Although the above is not an exhaustive list of the circumstances from which an inference of discrimination can be drawn, Jordan does not present evidence of any of these circumstances. *Id.* Jordan's theory that UCP management manufactured false complaints against her because they disapproved of her informing the parents of Spanish-speaking clients about other available social services constitutes a bald assertion of a subjective belief that cannot sustain her discrimination claim. (Jordan Dep. at 192:21-194:3.)

Moreover, Jordan's contention that UCP's Language Policy and its enforcement by management is indicative of discriminatory animus is without merit because neither the policy nor its enforcement is probative of discrimination given its codified business purpose. *Roman v. Cornell University*, 53 F. Supp. 2d 223, 237 (N.D.N.Y. 1999) (holding that "English-only rules are not discriminatory as applied to bilingual employees where there is a legitimate business justification for implementing such a rule).

Jordan misuses the dictum from *Roman* to support her argument that an employer-mandated English-only policy "may form the basis of an inference of national origin discrimination." 53 F. Supp. 2d at 236. *Roman* reinforces the consensus of holdings of other courts within this and other circuits finding that English-only rules are not *per se* discriminatory, if there is a legitimate business justification for it. *Id*. at 237 (finding that "the English-only instruction was insufficient to demonstrate that discrimination was the likely reason for plaintiff's termination); *see, e.g., Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1490 (9th Cir. 1993) (bilingual employees failed to make out a prima facie case of discrimination and defendant did not violate Title VII by adopting an English-only rule as to those employees); *Kania v. Archdiocese of Phila.*, 14 F. Supp. 2d 730, 736 (E.D. Pa. 1998) (plaintiff failed to prove that defendants engaged in national origin discrimination because "Title VII does not protect the ability of workers to express their cultural heritage at the workplace"); *Tran v. Standard Motor Prods., Inc.*, 10 F. Supp. 2d 1199, 1210 (D. Kan. 1998) (granting defendants' summary judgment motions on plaintiff's claim with respect to the English-only policy because such policy did not constitute a hostile work environment); *Prado v. L. Luria & Son, Inc.*, 975 F. Supp. 1349, 1354 (S.D. Fla. 1997) ("[a]n English-only rule by an employer does not violate Title VII as applied to bilingual employees so long as there is a legitimate business purpose for the rule"); *Long v. First*

*Union Corp. of Virginia*, 894 F. Supp. 933, 942 (E.D. Va. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996) (plaintiffs' failed to prove discriminatory intent in defendant's implementation of an English-only policy in the workplace). Indeed, several courts have even held that "an English-only policy designed to reduce intra-office tensions is a legitimate business reason." *Roman*, 53 F. Supp. 2d at 237; *see Kania*, 14 F. Supp. 2d at 736; *Tran*, 10 F. Supp. 2d at 1210.

In *Velasquez v. Goldwater Memorial Hosp*., the court addressed the very issue of "whether an employer's adoption of a language policy is evidence of a discriminatory animus such that plaintiff may survive summary judgment on the strength of the sole issue of fact of whether or not such a policy exists." 88 F. Supp. 2d 257, 261 (S.D.N.Y. 2000). *Velasquez* held that a hospital's unwritten "no-Spanish" policy did not raise an inference of national origin discrimination. *Id*. at 262-63. Although Equal Employment Opportunity Commission ("EEOC") regulations attach a presumptively discriminatory animus to English-only policies, those same regulations render permissible "an English-only rule that is applied 'only at certain times,'" . . . provided the employer can demonstrate that legitimate business reasons necessitate the rule. *Id*. (quoting 29 C.F.R. § 1606.7(b)).

According to Jordan and UCP's own written Language Policy, the foreign language proscription is applicable only at certain times. Indeed, Jordan was hired specifically to communicate in Spanish with Spanish-speaking children and parents about treatment, education, and program related issues. (Jordan Dep. at 150:9-16.) Moreover, as noted above, UCP articulated a legitimate business purpose for its English-only policy in the employee handbook that Jordan acknowledged receiving. (Falcone Aff., Exhibit E, Receipt of Employee Handbook.) That legitimate business purpose was to create a comfortable atmosphere for UCP's largely English-speaking client base. (Falcone Aff., Exhibit D, Employee Handbook at 46.)

Although Jordan did not expressly argue that the EEOC regulation would allow her to circumvent her burden of proving discriminatory intent by creating a presumption of discrimination, the EEOC regulation is inconsistent with the plain language of Title VII. "Pursuant to Title VII, a plaintiff must demonstrate that the defendant employer took the adverse employment action 'because of' her protected status.'" *Id.* (quoting 42 U.S.C. § 2000e-2(a)(1-2)). Consequently, in order to satisfy a disparate treatment claim that can survive the instant motion for summary judgment, there must be a triable issue of fact as to whether Defendant intentionally discriminated against Jordan on the basis of her national origin. *See Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 986 (1988).

Because discriminatory intent is the focal issue, Jordan must present sufficient evidence to enable a rational trier of fact to find that she was terminated because she was of Hispanic descent. Demonstrating only that she was terminated for non-compliance with UCP's Language Policy fails to satisfy this burden. *Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 622-23 (S.D.N.Y. 2009) (plaintiff failed to show that his employer's English-only policy evinced discriminatory animus towards Spanish-speaking employees when plaintiff did not produce evidence that the language restriction rule was contested by other Spanish-speaking employees or that it disproportionately affected such employees). "Classification on the basis of language does not by itself 'identify members of a suspect class' and would not support an inference of intentional national origin discrimination." *Velasquez*, 88 F. Supp. 2d at 262 (quoting *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983)).

The mere existence of UCP's Language Policy does not constitute a triable issue of fact sufficient to demonstrate the unlawful discrimination. Courts in other circuits have consistently found that anti-discrimination legislation with respect to employment does not equate national

origin with the language that one chooses to speak. *Garcia v. Gloor*, 618 F.2d 264, 268 (5th Cir. 1980). Indeed, an employer's denial of Spanish-speaking opportunities for bilingual employees is not a violation of Title VII. *Long*, 894 F. Supp. at 941. "Title VII does not protect an individual's ability to express their cultural heritage while at the workplace by speaking their native tongue," because there is nothing in the statute that confers such a right upon an employee while performing work-related duties. *Id.* Therefore, even if Jordan has raised a material issue as to whether she was terminated for violating UCP's Language Policy, this would not, by itself, constitute sufficient evidence to raise an inference of discriminatory animus on the basis of national origin.

At best, the evidence presented by Jordan might support an inference that she was terminated for violating UCP's written Language Policy that required employees to speak only English while conducting the business of the Program, excluding the enumerated business-related circumstances under which communication in another language was permitted. This singular evidence would be insufficient to support an inference that Jordan was terminated because of her national origin, especially because she was transferred to the Teacher's Assistant position in large part due to her bilingual abilities. (Mercogliano Decl. at ¶ 24.)

Similarly, Jordan's assertion that Defendant sought to prohibit her use of Spanish in communicating with the parents of Program clients because those communications were deemed to have encouraged those parents to seek additional charitable services from UCP is without merit. Jordan has failed to present any evidence that Defendant did anything to limit her ability to deliver quality services to UCP's Hispanic clients. On the contrary, Defendant encouraged her use of Spanish to effectively communicate with the Spanish-speaking parents of the disabled children in the Program and to ensure the safety and welfare of those children. (Mercogliano

Decl. at ¶ 16.)  Indeed, it was the threat to that very safety and welfare that Jordan posed with her abusive conduct that served as a legitimate and non-discriminatory reason for her termination, among the others cited by Defendant.

It is unnecessary to reach the other two prongs of the *McDonnell-Douglas* burden-shifting analysis since Jordan fails to establish a prima facie case of national origin discrimination.  Accordingly, Defendant's motion for summary judgment with respect to Jordan's Title VII discrimination claim is granted.

**B.  Jordan's Retaliation Claim**

Jordan asserts that UCP terminated her employment in retaliation for her expressed disapproval of UCP's Language Policy's purportedly discriminatory overtones.  (Pl. Opp. at 5.) In order to establish a prima facie case of retaliation under Title VII, a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find that:  (1) she was engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.  *Kessler v. Westchester County Dep't of Soc. Svcs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).

"With respect to the first element . . .  the plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a 'good faith, reasonable belief that the underlying employment practice was unlawful' under that statute." *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).  The reasonableness of Jordan's belief is to be assessed under a totality of the circumstances framework.  *Galdieri-Ambrosini*, 136 F.3d at 292; *see also Reed*, 95 F.3d at 1178.  Regarding the second element of

the prima facie analysis, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini*, 136 F.3d at 292.

In the instant matter, even assuming that Jordan genuinely believed herself to be the victim of national origin discrimination, the evidence is insufficient to support her claim of retaliation in one very critical respect: Jordan never issued a complaint to UCP management concerning her opinion that the Language Policy was either overtly or covertly discriminatory. (Jordan Dep. at 240:6-243:21.)[5]

The courts have held that in order for conduct to be considered a protected activity, the plaintiff must provide the employer with some notice that the plaintiff believes discrimination is occurring. *Ramos v. City of New York*, 1997 WL 410493, at *2 (S.D.N.Y. July 22, 1997) ("[I]n order to be protected activity the complainant must put the employer on notice that the complainant believes that discrimination is occurring.") Thus, Jordan's failure to even make Defendant aware of her opposition to the Language Policy and its enforcement fails to satisfy the second prong of the analysis. Because of her failure to inform UCP, it is unnecessary to reach the remaining two elements of the prima facie analysis. Reviewing the record in the light most favorable to the nonmoving party, it is clear that Jordan has not raised a triable issue of fact demonstrating that she engaged in protected activity. Accordingly, Defendant's motion for summary judgment with respect to Jordan's Title VII retaliation claim is granted.

---

[5] Jordan first testified that she complained to Falcone that she believed she was being discriminated against because she was precluded from speaking Spanish. (Jordan Dep. at 240:6-241:2.) However, she admitted that she never memorialized these complaints in writing. (*Id*. at 242:11-243:21.)

**IV.    Portnoy's Title VII Retaliation Claim**

Applying the same prima facie analysis discussed above in connection with Jordan's Title VII retaliation claim, there is no evidence that Portnoy participated in any protected activity. Jordan's speaking of Spanish during business hours is not considered a protected activity under Title VII.  *See Long*, 894 F. Supp. at 941.   Therefore, Portnoy's refusal to report Jordan's gratuitous use of Spanish because she deemed such scrutiny to be discriminatory falls beyond the ambit of conduct protected by Title VII.   Accordingly, because Portnoy failed to establish a prima facie case of retaliation, it is not necessary to reach the other prongs of the *McDonnell Douglas* burden-shifting analysis.

However, even if the Court were to assume satisfaction of the first three elements and proceed to the fourth element of the prima facie evaluation, a prima facie case still is not made out.   Portnoy cannot demonstrate a causal connection between her objection to Defendant's scrutiny of Jordan's use of Spanish and Portnoy's own termination.   Defendant articulated a particular, serious instance of child neglect as the legitimate reason for the termination of Portnoy's employment.   This well documented event, supported by the record before the Court, effectively forecloses the establishment of a link between Portnoy's termination and a retaliatory motive.   (Mercogliano Decl. at ¶¶ 31, 37; Portnoy Dep. at 211:9-212:15.)   Accordingly, Defendant's motion for summary judgment with respect to Portnoy's Title VII retaliation claim is granted.

**V.    Plaintiffs' NYSHRL and  NYCHRL Discrimination and Retaliation Claims**

Under 28 U.S.C. § 1367(c)(3), "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). A district court's discretion is guided by "balanc[ing] the traditional 'values of judicial economy,

convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors… will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.

Considering the above factors, there is no justifiable reason for the Court to exercise supplemental jurisdiction over Plaintiffs' remaining state and city law claims, which are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to Plaintiffs' Title VII claims, which are dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims, which are dismissed without prejudice.


SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2016

                                                    /s/
                                    _____
                                         DORA L. IRIZARRY
                                      United States District Judge